1

2

3

4

5

6

7

8                               UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JORDAN HUFF,                                Case No.  1:19-cv-01248-HBK (PC)

12              Plaintiff,                         ORDER GRANTING DEFENDANTS'
                                                   EXHAUSTION-BASED MOTION FOR
13         v.                                      SUMMARY JUDGMENT[1]

14    THOMAS MOORE, ANDRE                          (Doc. No. 43)
      MATEVOUSIAN, STEVE LAKES, and
15    FNU HESS,

16              Defendants.

17

18

19         Pending before the Court is the Motion for Summary Judgment filed by Defendants

20    Thomas Moore, Andre Matevousian, Steve Lakes, And FNU Hess on January 31, 2023.  (Doc.

21    No. 43, "MSJ").  Plaintiff filed an Opposition, (Doc. No. 49), and Defendants filed a Reply.

22    (Doc. No. 50).  With leave of the Court, Plaintiff filed a Sur-Reply.  (Doc. Nos. 53, 54).  The

23    Court, finding no dispute of material fact, grants Defendants' MSJ.

24         ////
          ////
25         ////

26

27

28    [1] All parties consented to the jurisdiction of a magistrate judge and the instant action was assigned to the
      undersigned pursuant to 28 U.S.C. § 636(c)(1).  (Doc. No. 36)

1

**I.     BACKGROUND**

2

**A. Summary of Plaintiff's Complaint**

3      Plaintiff Jordan Huff ("Plaintiff' or "Huff"), a federal prisoner, initiated this action by

4   filing a pro se civil rights complaint pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*,

5   403 U.S. 388 (1971).  (Doc. No. 1).   Huff proceeds on his second amended complaint.  (Doc.

6   No. 16, "SAC").  The Court screened the SAC and found it stated a cognizable Eighth

7   Amendment medical deliberate indifference claim concerning Defendants' alleged delay in

8   treating Plaintiff's pseudofolliculitis barbae ("PFB").  (*See* Doc. No. 20).

9      According to the SAC, Huff "tried to show [Defendant] Dr. Moore his scalp and he didn't

10   want to see it." (*Id.*).  Similarly, Huff told Defendant Matevousian about his PFB "on numerous

11   occasions," to which he responded, "we don't have a dermatologist." (*Id.* at 15).  As for

12   Defendant Lakes, Huff showed him his scalp on July 15, 2018 and on August 14, 2018, and

13   Lakes told him to let him know if medical would not see him. (*Id.* at 18).  On September 19,

14   2018, after Huff told Lakes he still had not been seen by medical staff, Lakes responded, "give

15   them time." (*Id.*).  Finally, Huff showed Defendant Hess the PFB on his scalp multiple times, and

16   when he showed him the PFB on August 14, 2018, Hess told him to "fill out a cop out and bring

17   it to him," and later told Plaintiff he was "on the schedule to be seen." (*Id.* at 21).  Huff explained

18   to Hess that "he had been hearing that for a year now." (*Id.*).  Hess responded "I can't make them

19   do [their] jobs.  I'm not over that [department]." (*Id.*).

20      Due to the Defendants' alleged inaction, Plaintiff's PFB worsened.  Plaintiff explained to

21   correctional officials that it felt "like ants [were] crawling on the back of [his] head." (*Id.* at 9).

22   And, due to the delay, Plaintiff experienced "itching, soreness, redness, bumps with pus and

23   bleeding, and couldn't sleep." (*Id.*).  Plaintiff seeks monetary damages from each Defendant,

24   totaling $144 million dollars. (*Id.* at 23).

25      After service, the Court granted Defendants ex parte application to file a pre-answer

26   motion for summary judgment.  (Doc. Nos. 30, 31).

27

**B. Defendant's Exhaustion-Based Motion for Summary Judgment**

28      Defendant filed the instant exhaustion-based MSJ on January 31, 2023.  (Doc. No. 43).  In

1    support, Defendants submit a memorandum of points and authorities (Doc. No. 43-2); a statement

2    of undisputed material facts (Doc. No. 43-3); the Declaration of Jennifer Vickers (Doc. No. 43-4);

3    and an appendix of unpublished authorities cited in Defendants' memorandum of points and

4    authorities (Doc. No. 43-5).  Defendants contend the uncontroverted evidence proves Plaintiff did

5    not properly and fully exhaust his available administrative grievances regarding his Eighth

6    Amendment claim against any Defendant because he did not complete the administrative review

7    process for either of his underlying administrative requests.

8            **C.  Plaintiff's Opposition to Exhaustion-Based MSJ**

9         The Court granted Plaintiff two extensions of time in which to respond to Defendants'

10   MSJ, with a deadline of June 5, 2023.  (Doc. Nos. 46, 48).  On June 15, 2023, Plaintiff filed an

11   Opposition.  (Doc. No. 49).  In support, Plaintiff submits his own declaration and exhibits in

12   support.  (Doc. No. 49 at 10-46).  In the interest of justice, the Court will consider Plaintiff's

13   untimely Opposition.  After Plaintiff filed his Opposition and Defendants replied, Plaintiff sought

14   leave to file a Sur-Reply, which the Court granted.  (Doc. Nos. 53, 54).

15        Plaintiff's account of the grievance process for his two administrative remedies differs

16   significantly from Defendants'.  However, as set forth below, Plaintiff fails to raise a genuine

17   dispute of material fact as to whether he exhausted either of his two administrative requests.

18                             **II.     APPLICABLE LAW**

19        **A.  Summary Judgment Standard**

20        Summary judgment is appropriate when there is "no genuine dispute as to any material

21   fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is

22   material where it is (1) relevant to an element of a claim or a defense under the substantive law

23   and (2) would affect the outcome of the suit.  *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242,

24   247 (1987).

25        The party moving for summary judgment bears the initial burden of proving the absence

26   of a genuine dispute of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  When

27   the moving party has met this burden, the nonmoving party must go beyond the pleadings and set

28   forth specific facts by affidavits, deposition testimony, documents, or discovery responses,

1    showing there is a genuine issue that must be resolved by trial.  *See* Fed. R. Civ. P. 56(c)(1);

2    *Pacific Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir.

3    2021).  A mere "scintilla of evidence" in support of the nonmoving party's position is

4    insufficient.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  Rather, the

5    evidence must allow a reasonable juror, drawing all inferences in favor of the nonmoving party,

6    to return a verdict in that party's favor.  *Id.*

7            In an exhaustion-based summary judgment motion, the defendant bears the initial burden

8    of establishing "that there was an available administrative remedy, and that the prisoner did not

9    exhaust that available remedy."  *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).  If the

10   defendant carries that burden, "the burden shifts to the prisoner to come forward with evidence

11   showing that there is something in his particular case that made the existing and generally

12   available administrative remedies effectively unavailable to him."  *Id.*  The ultimate burden of

13   persuasion remains, however, with defendant.  *Id.*

14           The Court has carefully reviewed and considered all arguments, points and authorities,

15   declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and

16   other papers filed by the parties.  The omission to an argument, document, paper, or objection is

17   not to be construed that the Court did not consider the argument, document, paper, or objection.

18   Instead, the Court thoroughly reviewed and considered the evidence it deemed admissible,

19   material, and appropriate for purposes of this Order.

20           **B.  Exhaustion Under the PLRA**

21           Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42

22   U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other

23   correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C.

24   § 1997e(a).  The exhaustion requirement "applies to all inmate suits about prison life," including

25   *Bivens* claims.  *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).  Exhaustion is a condition

26   precedent to filing a civil rights claim.  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

27           The PLRA recognizes no exception to the exhaustion requirement, and the court may not

28   recognize a new exception, even in "special circumstances."  *Ross v. Blake*, 578 U.S. 632, 648

4

1  (2016).  The one significant qualifier is that "the remedies must indeed be 'available' to the

2  prisoner." *Id.* at 639.  A prison's internal grievance process controls whether the grievance

3  satisfies the PLRA exhaustion requirement.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).

4      An inmate must exhaust available remedies but is not required to exhaust unavailable

5  remedies.  *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (*en banc*).  "To be available, a

6  remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Id.*

7  (quoting *Brown v. Valoff*, 422 F.3d 926, 936–37 (9th Cir. 2005)).  "Accordingly, an inmate is

8  required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain

9  'some relief for the action complained of.'" *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016)

10  (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001) ).

11      Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead

12  and prove." *Jones*, 549 U.S. at 204.  It is the defendant's burden to prove that there was an

13  available administrative remedy, and that the prisoner failed to exhaust that remedy.  *Albino*, 747

14  F.3d at 1172.  "Once the defendant has carried that burden, the prisoner has the burden of

15  production.  That is, the burden shifts to the prisoner to come forward with evidence showing that

16  there is something in his particular case that made the existing and generally available

17  administrative remedies effectively unavailable to him." *Id*.  If the court concludes that the

18  prisoner failed to exhaust available administrative remedies, the proper remedy is dismissal

19  without prejudice. *See Jones*, 549 U.S. at 223–24; *Lira v. Herrera*, 427 F.3d 1164, 1175–76 (9th

20  Cir. 2005).

21      **C.  BOP Grievance Procedures**

22      The Bureau of Prisons ("BOP") grievance process, which is set forth at 28 C.F.R. §

23  542.13–.19, governs this action. At the first step, an inmate must present his complaint informally

24  to prison staff using a BP-8 form.  If the informal complaint does not resolve the dispute, the

25  inmate may file an "Administrative Remedy Request" with the Warden using a BP–9 form.[2]  The

26  BP–9 must be submitted within 20 calendar days of the date of the incident. 28 C.F.R. §

27
28

---

[2] If a complaint is "sensitive," such that "the inmate's safety or well-being would be placed in danger if the Request became known at the institution," the inmate may bypass the Warden and file a BP–9 directly with the BOP Regional Director. 28 C.F.R. § 542.14(d).

542.14(a).  If the Warden renders an adverse decision to the BP–9, the inmate may appeal the

decision to the Regional Director using a BP–10 form.  28 C.F.R. § 542.15(a).  The BP–10 must

be submitted to the Regional Director within 20 calendar days of the date of the Warden's

adverse decision.  *Id.*  The inmate then may appeal an adverse decision by the Regional Director

to the General Counsel using a BP–11 form. *Id.*  The BP–11 must be submitted to the General

Counsel within 30 calendar days from the date the Regional Director signed the

response.  *Id.*  "Appeal to the General Counsel is the final administrative appeal."  *Id*.

"Exhaustion is not complete until an appeal has been filed and denied at all levels of the

administrative process." *Hossa v. Langford*, 2020 WL 5868138, at *6 (C.D. Cal. Aug. 25, 2020),

*report and recommendation adopted*, 2020 WL 5846917 (C.D. Cal. Oct. 1, 2020) (citing

*Champion v. Smith*, 2012 WL 930858 at *1 (E.D. Cal. Mar. 19, 2012) ("Administrative

exhaustion is complete when the General Counsel rules on the BP-11.").

At any level, the BOP may reject and return a defective Request or Appeal without a

response.  28 C.F.R. § 542.17(a).  However, the inmate is entitled to written notice of the reason

for the rejection.  28 C.F.R. § 542.17(b).  If the defect can be corrected, the notice shall inform

the inmate of a reasonable time extension for correcting the defect and resubmitting the Request

of Appeal.  *Id*.  And if the inmate is not given an opportunity to correct the defect, "the inmate

may appeal the rejection" to the next appeal level.  28 C.F.R. § 542.17(c).  *See also Kourani v.*

*Sproul*, 2023 WL 4825000, at *3 (S.D. Ill. July 27, 2023).

Absent exceptions not applicable here, "[o]nce filed, response shall be made by the

Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and

by the General Counsel within 40 calendar days."  28 C.F.R. § 542.18.  "If the inmate does not

receive a response within the time allotted for reply, including extension, the inmate may consider

the absence of a response to be a denial at that level." *Id.*

### III.    ANALYSIS

#### A.  Material Facts Regarding Exhaustion of Administrative Remedies

Following a thorough review of the evidence submitted, the Court finds these material

facts are deemed undisputed, unless otherwise indicated:

1    Administrative Remedy No. 923124

2    • During the events giving rise to this action, Plaintiff Huff was incarcerated at United

3        States Prison – Atwater ("USP-Atwater").  (Doc. No. 17 at 7-21).

4    • On November 13, 2017, Huff submitted an Informal Resolution request for

5        Administrative Remedy No. 923124, alleging he had not received medical care for

6        PFB as he requested, and again requested medical care.  (Doc. No. 43-4 at 3-5, ¶¶ 7-

7        10); (Doc. No. 49 at 18).

8    • Plaintiff contends that he did not receive a response to his Informal Resolution request

9        for Administrative Remedy No. 923124 until September 24, 2018.  (Doc. No. 49 at 3).

10       This is contradicted by the record provided by Defendants, which reflects that the

11       BOP responded to the Informal Resolution request on November 16, 2017, stating that

12       Huff was scheduled for medical care, was receiving medical care, and would continue

13       to receive medical treatment.  (Doc. No. 43-4 at 3-5, ¶¶ 7-10).

14   • On November 27, 2017, Huff submitted a BP-9 form for Administrative Remedy No.

15       923124.  In it, Huff states that he requested medical care but did not receive that care.

16       (*Id*. at 3-5, ¶¶ 7-9, 11.)

17   • On December 7, 2017, the BOP responded to the BP-9, stating that Huff was seen by a

18       healthcare provider, there was no redness or active drainage, and no further medical

19       intervention was warranted.  (*Id*. at 3-5, ¶¶ 7-9, 12.)

20   • On December 3, 2018, almost one year later, Huff submitted a BP-10 form for

21       Administrative Remedy No. 923124.  (*Id*. at 3-5 ¶¶ 7-9, 13.)

22   • On December 3, 2018, the BOP responded, stating that the BP-10 remedy request was

23       untimely.  (*Id*.)

24   • There is no record of Huff submitting either an appeal of the untimely rejection of his

25       BP-10 or a BP-11 regarding Administrative Remedy No. 923124.  (*Id*. at 6 ¶ 14.)

26   Administrative Remedy No. 954992

27   • Huff submitted an Informal Resolution request for Administrative Remedy No.

28       954992 on September 18, 2018.  Huff complained he had not received medical care

7

1  for PFB.  (*Id*. at 3-4, 6, ¶¶ 7-9, 15.)

2  • The BOP responded on September 24, 2018, stating that Huff received medical care

3   on May 25, 2018 and was currently scheduled to see the Clinical Director.  (*Id*.).

4  • Huff submitted a BP-9 form for Administrative Remedy No. 954992 on September 25,

5   2018.  Huff complained about his PFB and stated that he had not received the

6   necessary treatment.  (*Id*. at 3-4, 6, ¶¶ 7-9, 16.)  Huff did not receive a response to his

7   BP-9 form appeal within the 30 days set forth in 28 C.F.R. § 542.18.

8  • On November 13, 2018, Plaintiff submitted a BP-10 form to which he attached his

9   pending BP-9 form. (Doc. No. 49 at 35-36).  This conflicts with Defendants' assertion

10   that, "There is no record of Mr. Huff submitting any further appeal on forms BP-10 or

11   BP-11 regarding Administrative Remedy No. 954992."  (Doc. No. 43-4 at 6, ¶ 18.)

12  • The BOP responded to the BP-9 on November 19, 2018, stating that Huff was

13   scheduled to see the Clinical Director.  (*Id*. at 3-4, 6, ¶¶ 7-9, 17.)

14  • On December 11, 2018, BOP issued a rejection notice to Plaintiff's BP-10 appeal,

15   stating his appeal was untimely. (Doc. No. 49 at 39).  Plaintiff disputes that he ever

16   was issued this rejection notice.  He states that he did not receive notice of the

17   December 11, 2018 rejection until he submitted an Inmate Request to Staff on or about

18   January 7, 2019, asking for an update on his BP-10 appeal.  (Doc. No. 49 at 3).

19   Thereafter, on or about January 13, 2019, Plaintiff received a response to his Inmate

20   Request to Staff, stating that his BP-10 was denied on December 11, 2018.  (*Id*. at 3-

21   4).  On January 15, 2019, Plaintiff met with his Unit Counselor who provided him a

22   copy of the response and confirmed the denial.  (*Id*. at 4).  The rejection notice,

23   attached to Plaintiff's Opposition, appears to indicate that it was not received at USP-

24   Atwater until January 15, 2019, more than a month after it was issued.  (Doc. No. 49

25   at 39).

26  • Plaintiff asserts he subsequently sent a letter to the Western Regional Office

27   "explaining why he had not attached the BP-9 denial" and "included a copy of the

28   letter from Counselor Coggin [explaining that Plaintiff's unit was in lockdown during

1    part of January 2019]." (Doc. No. 49 at 4).  The exact date Plaintiff mailed this letter

2    is unknown, but Plaintiff asserts he sent it "within twenty days of [Huff] receiving the

3    rejection of the BP-10 . . ." (*Id*.).  Plaintiff did not receive a response.  Defendants

4    neither confirm nor deny the existence of this letter and Plaintiff does not attach a

5    copy to any of his filings.

6    •  On April 25, 2019, Plaintiff sent a letter to the Central Office "requesting guidance . . .

7    about Region's failure to respond" but to date he has received no response.  (*Id*., n. 4).

8    **B.  Plaintiff Failed to Exhaust Administrative Remedy No. 923124**

9    To properly exhaust his administrative remedies, Plaintiff must timely complete all four

10   steps of the BOP grievance process or demonstrate that one or more of the steps were effectively

11   unavailable to him.  It is undisputed that more than 11 months elapsed between the BOP response

12   to Plaintiff's BP-9 form on December 7, 2017, and Plaintiff's submission of a BP-10 appeal on

13   December 3, 2018.  (Doc. No. 43-4 at 5-6, ¶¶ 12-13).  Plaintiff does not provide any explanation

14   for this delay and appears to conflate the record for Administrative Remedies No. 923124 and No.

15   954992.  (*See* Doc. No. 49 at 2-3).  It is uncontroverted that the BOP rejected Plaintiff's BP-10

16   appeal as untimely on December 3, 2018 and that Plaintiff did not attempt to appeal the rejection

17   by providing an explanation for the delay or pursue an appeal to the next level as permitted by 28

18   CFR § 542.17(c).  (Doc. No. 43-4 at 5-6, ¶¶ 12-14).  Accordingly, the Court finds that Plaintiff

19   failed to exhaust Administrative Remedy No. 923124.

20   **C.  Plaintiff Failed to Exhaust Administrative Remedy No. 954992**

21   The record is more complicated for Administrative Remedy No. 954992.  Plaintiff

22   submitted a BP-9 form on September 25, 2018, to which the Warden did not respond until

23   November 19, 2018, past the October 17, 2018, 20-day deadline, to respond.  (Doc. No. 49 at 31);

24   *see* 28 CFR § 542.18.  Plaintiff properly treated the Warden's failure to timely respond to his BP-

25   9 form as a rejection of the request and proceeded to file a BP-10 on November 13, 2018,

26   attaching a copy of the BP-9 as required by 28 CFR 542.15(b)(1).  (*Id*. at 35-36).  Defendants

27   deny Plaintiff ever filed a BP-10, claiming that, "There is no record of Mr. Huff submitting any

28   further appeal on forms BP-10 or BP-11 regarding Administrative Remedy No. 954992."  (Doc.

1   No. 43-4 at 6, ¶ 18.)  The Court disagrees.  The evidence Plaintiff submits reflects that the BOP

2   not only received Plaintiff's BP-10 appeal but responded to it on December 11, 2018.  (*Id.* at 39).

3   In its December 11, 2018 rejection notice, the BOP stated that Plaintiff's BP-10 was untimely

4   filed.[3]  (*Id.*).

5          As noted above, a rejection notice may identify curable defects in the rejected grievance

6   or appeal or simply reject the filing without providing an opportunity to cure the deficiencies.  *See*

7   28 C.F.R. 542.17(b)-(c).  If the notice provides the grievant an opportunity to cure, "the notice

8   shall inform the inmate of a reasonable time extension within which to correct the defect and

9   resubmit the Request or Appeal."  28 C.F.R. 542.17(b).  If no opportunity to cure is provided,

10  "the inmate may appeal the rejection, including a rejection on the basis of an exception as

11  described in § 542.14(d), to the next appeal level."  28 C.F.R. 542.17(c).  The December 11

12  notice does not explicitly state that Plaintiff can cure the identified deficiencies nor set forth a

13  "reasonable time extension" within which to do so.  *See* Doc. No. 49 at 39.

14         Plaintiff appears to have interpreted the notice as permitting him to cure the deficiencies

15  in his BP-10 appeal.  He sent a "response" to the Regional Office "explaining" why he had not

16  attached the BP-9 denial and provided a copy of a letter from Counselor Coggin certifying that

17  USP Atwater was in lockdown from January 7-15, 2018 which "may have cause[d] delays in

18  preparation and/or submission of legal documents in a timely manner."  (Doc. No. 49 at 4, 41).  In

19  his Sur-Reply, Plaintiff characterizes his response to the December 11, 2018 notice differently.

20  He states that he "corrected the errors" in his BP-10 and "resubmitted the Administrative Remedy

21  Appeal – as was instructed."  (Doc. No. 54 at 2).  Plaintiff asserts that the BOP never responded

22  to this submission.  (*Id.*).

23         Assuming Plaintiff filed a resubmitted BP-10 appeal, as he asserts, the Regional Office

24  then had 30 days to respond.  *See* 28 C.F.R. § 542.18.  Plaintiff does not specify when he

25  resubmitted his appeal, but he claims it was within 20 days of receiving the rejection notice on or

26  about January 15, 2019.  (Doc. No. 49 at 4).  Thus, Plaintiff's resubmitted appeal was submitted

27

28  [3] Plaintiff notes that the rejection notice was incorrectly labeled as pertaining to Administrative Remedy No. 923124, however there is no evidence that this clerical error caused any prejudice to Plaintiff.

1   at the latest February 5, 2019.  The Regional Office deadline to respond was therefore, at the

2   latest, March 7, 2019.  *See* 28 C.F.R. § 542.18.  When Plaintiff received no response to his

3   resubmitted appeal by that time he was required to "consider the absence of a response to be a

4   denial at that level" and submit a BP-11 appeal.  *Id*.

5        It is uncontested that Plaintiff did not submit a BP-11 appeal.  On April 25, 2019, Plaintiff

6   sent what he describes as "Central Office Administrative Remedy Appeal" but specifies that "the

7   document was not an actual Appeal, it was rather a letter requesting guidance from Central Office

8   about Region's failure to respond."  (Doc. No. 49 at 4 n.6).  On May 5, 2023, Plaintiff sent a

9   "request to the records department at his present institution requesting a copy of the outgoing

10  legal mail log at USP Atwater, for the day he mailed his response to the rejection . . ."  (*Id*. at 4).

11  Neither can be fairly characterized as a BP-11 Appeal to the General Counsel.  *See* 28 C.F.R. §

12  542.15(a).

13       Courts routinely conclude that a prisoner who does not receive a response at a lower level

14  of the administrative grievance process fails to exhaust his remedies if he does not pursue an

15  appeal to the next level despite the lack of response at the lower level.  *Dunne v. Jusino*, 2021 WL

16  2548963, at *3 (C.D. Cal. Mar. 31, 2021), *report and recommendation adopted*, 2021 WL

17  4169613 (C.D. Cal. Sept. 10, 2021); *see Free v. Peiker*, 2018 WL 3637009, at *4 (E.D. Cal. July

18  30, 2018) (rejecting plaintiff's contention that he should be excused from appealing to the

19  General Counsel after failing to receive a timely response to his BP-10 from the Regional

20  Director), report and recommendation adopted, 2018 WL 11025052 (E.D. Cal. Nov. 6, 2018),

21  aff'd, 778 Fed. App'x 491 (9th Cir. 2019); *Arnett v. Shojaie*, 2011 WL 5434417, at *10 (C.D. Cal.

22  Nov. 8, 2011) ("[W]here an initial appeal is logged in, but subsequently lost or otherwise not

23  made the subject of a response, the inmate is entitled to treat the appeal as denied after the time

24  for a response has elapsed, and the inmate then may submit an appeal at the next level. In such

25  circumstances, further exhaustion is not excused.") (citing cases); *Frost v. Banks*, 2010 WL

26  1839745, at *8 (C.D. Cal. Jan. 14, 2010), *report and recommendation adopted*, 2010 WL

27  1873057 (C.D. Cal. May 5, 2010) ("Thus, the lack of receipt of a timely response from the

28  Regional Director did not prevent plaintiff from proceeding to the... final level of the BOP's

1  administrative process.").

2       Assuming the BOP never responded to Plaintiff's resubmitted BP-10 appeal, it is

3  uncontested that Huff did not complete the administrative remedy process and treat the non-

4  response as a denial by filing a BP-11.  Because he failed to do so, Huff did not exhaust his

5  administrative remedies as to Administrative Remedy No. 954992.

6       The Court finds the undisputed record demonstrates Plaintiff did not fully exhausted his

7  available administrative remedies for either Administrative Remedy No. 923124 or

8  Administrative Remedy No. 954992.  Because Plaintiff failed to fully exhaust his administrative

9  remedies as required by 42 U.S.C. § 1997e(a), Defendants are entitled to summary judgment.

10       Accordingly, for the reasons set forth above, it is **ORDERED**:

11      1.  Defendants' motion for summary judgment (Doc. No. 43) is GRANTED in full.

12      2.  The Clerk of Court is directed to enter judgment in favor of Defendants and close this

13         case.

14

15  Dated:   August 30, 2023

16                  HELENA M. BARCH-KUCHTA
                UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

12